NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-5171

STEPHEN CARROLL, GARY BENTON,
MARK MOODY, STUART HILL, and RONALD BROWNE,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant- Appellee.

_____

DECIDED:  August 11, 2006

_____

Before MAYER, BRYSON, and LINN, <u>Circuit Judges</u>.

PER CURIAM.

## DECISION

The five plaintiffs appeal from a decision of the United States Court of Federal Claims dismissing the plaintiffs' action for lack of jurisdiction.  Because we concur with the trial court's conclusion that the pay statute at issue in this case, 5 U.S.C. § 5378(a), is not a money-mandating statute, we agree that the Court of Federal Claims did not have jurisdiction under the Tucker Act, 28 U.S.C. § 1491.  We therefore <u>affirm</u> the decision of the trial court.

BACKGROUND

The plaintiffs are employed by the Department of Treasury. They work as police officers at the Bureau of Engraving and Printing in Fort Worth, Texas, and at the U.S. Mint facilities in Pennsylvania, Kentucky, Colorado, and California. From 1999 to 2002, Treasury maintained two pay scales, one for officers working in Washington, D.C., and one for officers in other locations throughout the United States. The pay scale for officers in Washington was designated "TW," and the pay scale for officers in other locations was designated "TR." The plaintiffs assert that the TW scale has a base salary approximately 7-9% higher than the TR scale.

In 2004, the plaintiffs filed an action in the Court of Federal Claims challenging the difference between the two pay scales as unlawful and seeking compensation for the difference between the two scales over the period of their employment. Following briefing and argument, the trial court granted the government's motion to dismiss for lack of jurisdiction. The court explained that the Tucker Act creates a cause of action against the United States only when another statute, regulation, or the Constitution "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." Carroll v. United States, 67 Fed. Cl. 82, 84 (Ct. Fed. Cl. 2005) ("Carroll I") (quoting United States v. Testan, 424 U.S. 392, 402 (1976)).

The trial court first rejected the plaintiffs' claim to the extent that it was based on the Back Pay Act, 5 U.S.C. § 5596. Citing our decisions in Worthington v. United States, 168 F.3d 24, 26 (Fed. Cir. 1999), and United States v. Connolly, 716 F.2d 882, 887 (Fed. Cir. 1983), the court stated that the Back Pay Act, "by itself, cannot be used as an exclusive basis for Tucker Act jurisdiction." Carroll I, 67 Fed. Cl. at 85. The court

noted that the plaintiffs had not alleged that their basic pay rate was reduced. Moreover, the court explained that allegations that "the performance of duties warrant[s] or justif[ies] higher pay than that previously received does not state a valid claim under the [Back Pay Act]." Id. (citing Testan, 424 U.S. at 406).

The court further concluded that the Treasury pay statute at issue, 5 U.S.C. § 5378, is not a money-mandating statute as applied to the plaintiffs' claims.[1] The court explained that section 5378(a) "does not mandate the Secretary to implement a single, locale-independent, pay scale" but rather "grants the Secretary wide discretion to set pay rates" within a range of salaries. Carroll I, 67 Fed. Cl. at 86. Noting that the plaintiffs had not argued that they were paid less than the lower limit of the prescribed salary range, the court found that "no explicit provision of the statute had been violated." Id. The court therefore granted the government's motion to dismiss for lack of jurisdiction.

DISCUSSION

On appeal, the plaintiffs acknowledge that the Back Pay Act cannot be invoked without first demonstrating an agency's violation of an applicable statute or regulation. The plaintiffs thus concede that their claim "turns on whether 5 U.S.C. § 5378 provides a basis for jurisdiction."

---

[1] That statute states: "(a) The Secretary of the Department of the Treasury, or his designee, in his sole discretion shall fix the rates of basic pay for positions within the police forces of the United States Mint and the Bureau of Engraving and Printing without regard to the pay provisions of title 5, United States Code, except that no entry-level police officer shall receive basic pay for a calendar year that is less than the basic rate of pay for General Schedule GS-7 and no executive security official shall receive basic compensation for a calendar year that exceeds the basic rate of pay for General Schedule GS-15." 5 U.S.C. 5378 (Supp. 2006) (enacted by amendment Oct. 10, 1997).

The plaintiffs argue that section 5378 is money mandating with respect to their claims because the discretion granted the Secretary "pertains solely to the establishment of the level of basic rate of pay for police positions." According to the plaintiffs, the pay statute does not authorize a dual pay system for police officers. Yet the plaintiffs fail to cite any authority that such express authorization is required before the Secretary can institute a location-based pay system. The statute explicitly states that the Secretary "in his sole discretion shall fix the rates of basic pay," reciting only a single exception to that discretion: that the range of pay be bounded by the basic rate of pay for General Schedules GS-7 and GS-15. See 5 U.S.C. § 5378(a). Because the plaintiffs have not alleged that their pay fell outside that range, section 5378(a) does not grant them any right to recover money damages from the United States.

Although the plaintiffs contend that this court has previously concluded that the presence of the word "may" in a statute does not necessarily render the statute wholly discretionary, the cases on which the plaintiffs rely do not help them. In those cases, this court concluded that, despite the use of the term "may," the statutes in question mandated payment upon proof that some statutory standard was satisfied. Section 5378(a), by contrast, states that the Secretary "in his sole discretion shall fix the rates of basic pay" and thus plainly does not create a right to a level of pay other than the level selected by the Secretary of the Treasury within the range assigned by the statute. While it is true that the Secretary is obliged to pay employees, the issue before the trial court was whether the statute required the Secretary to pay all the subject police officers at the higher rate assigned to such officers who work in Washington, D.C. As to that issue, the statute is not money mandating. Indeed, even if the statute were

interpreted to forbid the Secretary from creating different pay levels for different locations, the statute would still not be money mandating, as it would not require the Secretary to increase the pay levels for all regionally based officers, rather than reducing the pay levels for officers in Washington, D.C.

The plaintiffs argue that the lower court "failed to properly apply the Supreme Court's 'fair interpretation' rule under United States v. White Mountain Apache Tribe, 537 U.S. 465 (2003)" in determining whether section 5378(a) is a money-mandating statute for purposes of giving the Court of Federal Claims jurisdiction under the Tucker Act. In doing so, the plaintiffs appear to be perhaps expressing concern that the trial court applied the "fairly be interpreted" jurisdictional test set forth in United States v. Mitchell, 463 U.S. 206, 217 (1983), and not the "fair inference" described in White Mountain. We disagree. The trial court acknowledged the potential differences between the jurisdictional tests of White Mountain and Mitchell, but nonetheless concluded that any "lack of clarity" was of little consequence because "[u]nder either approach, the statutes identified by the plaintiffs are clearly not money-mandating." Carroll I, 67 Fed. Cl. at 85 (citing Fisher v. United States, 402 F.3d 1167, 1174 (Fed. Cir. 2005) ("Whether White Mountain alters the Mitchell test, as suggested by the dissent in White Mountain, and whether the new test is less stringent in some respects or is the same, as suggested by the concurrence, is less than clear. Future opinions by the Supreme Court may clarify all this.")). Thus, the trial court was plainly cognizant of the two articulated standards for determining whether a statute is money mandating and resolved that issue without needing to determine whether the two standards are different or to choose between them. The trial court's analysis of the Supreme Court

05-5171                                                    5

decisions, the governing standard, and the application of that standard to this case was plainly correct. The court therefore did not err in dismissing the plaintiffs' claim for lack of jurisdiction.