# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 9, 2009        Decided December 18, 2009

No. 08-5127

KYAW ZAW NYUNT,
APPELLANT

v.

CHAIRMAN, BROADCASTING BOARD OF GOVERNORS,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cv-01152)

*Timothy B. Shea* argued the cause and filed the briefs for appellant.

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GARLAND and KAVANAUGH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: Unlike many U.S. Government agencies, the Broadcasting Board of Governors is authorized to hire non-U.S.-citizens. But there is a catch: The BBG may do so only when no "suitably qualified" U.S. citizen is available to fill the job in question. 22 U.S.C. § 1474(1).

Nyunt is a U.S. citizen who worked at the BBG, applied for a promotion, and lost out to a non-U.S.-citizen. He sued the BBG, claiming he was "suitably qualified" and that the BBG therefore contravened its statutory mandate when it promoted a non-U.S.-citizen over him. The problem is that Nyunt brought this claim in federal district court under the Administrative Procedure Act. This Court has repeatedly held that federal employees may not bring employment and personnel suits of this kind under the APA, but instead must pursue such claims through the elaborate administrative and judicial review system set up by the Civil Service Reform Act of 1978. We therefore affirm the District Court's dismissal of Nyunt's complaint.

I

Kyaw Zaw Nyunt, a U.S. citizen, worked for many years as an international radio broadcaster in the Burmese service of Voice of America. The Voice of America is run by the Broadcasting Board of Governors, a U.S. Government agency. In March 2003, Nyunt applied for a promotion to a more senior international broadcaster position. The BBG selected a non-U.S.-citizen over Nyunt and other applicants.

3

In deciding to hire a non-U.S.-citizen, the BBG relied on its internal hiring policy and the relevant portion of its authorizing statute, 22 U.S.C. § 1474(1). Section 1474(1) provides that the BBG – unlike most federal agencies – may hire non-U.S.-citizens. The statute grants that authority, however, only "when suitably qualified United States citizens are not available."

The BBG has interpreted the phrase "suitably qualified" to mean "equally or better qualified." Guidelines for Selection, Promotion, and Employment of Non-U.S. Citizens in the Presence of Qualified U.S. Citizen Competitors, App. at 30. In Nyunt's view, the BBG's interpretation rewrites and effectively eviscerates Congress's mandate. Nyunt contends, in short, the BBG cannot hire or promote a non-U.S.-citizen over a U.S. citizen who is qualified for the position.

After the BBG promoted a non-U.S.-citizen over him, Nyunt sued under several anti-discrimination statutes. He also raised claims under the Administrative Procedure Act regarding the BBG's alleged misinterpretation and violation of 22 U.S.C. § 1474(1). *See* 5 U.S.C. § 706(2)(A), (C).

The District Court dismissed Nyunt's complaint. A prior panel of this Court summarily affirmed the District Court's dismissal of all but the present APA claims. We now conclude that our precedents squarely foreclose Nyunt's APA claims, and we therefore affirm the District Court's dismissal of those as well.

II

At the outset, the BBG contends that Nyunt lacks standing. We disagree. Nyunt alleges that he is a U.S. citizen who applied for and was unlawfully denied a promotion.

That alleged injury is fairly traceable to the BBG's hiring policy and decision. And it likely would be redressed by a favorable disposition, which would help establish Nyunt's right to the job in question or to front pay and benefits. *See* Compl. ¶¶ C, G (requested relief includes an order "for front pay and benefits, if the BBG does not or will not employ plaintiff," and "[s]uch other legal and equitable relief as may be just and proper").

We turn, therefore, to analysis of Nyunt's Administrative Procedure Act claim. Nyunt's choice to bring his claim under the APA is problematic because a long line of cases requires that federal employees pursue employment and personnel challenges of this kind through the procedures set up by the Civil Service Reform Act of 1978, rather than under the APA.

As the Supreme Court stated in *United States v. Fausto*, the CSRA is comprehensive: It regulates virtually every aspect of federal employment and "prescribes in great detail the protections and remedies" applicable to adverse personnel actions, "including the availability of administrative and judicial review." 484 U.S. 439, 443 (1988). The CSRA is also exclusive: It constitutes *the* remedial regime for federal employment and personnel complaints. *See Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009); *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009); *Fornaro v. James*, 416 F.3d 63, 66-67 (D.C. Cir. 2005); *Graham v. Ashcroft*, 358 F.3d 931, 933-35 (D.C. Cir. 2004); *Carducci v. Regan*, 714 F.2d 171, 172 (D.C. Cir. 1983); *see also Fausto*, 484 U.S. at 444; *Bush v. Lucas*, 462 U.S. 367, 388-90 (1983); 5 U.S.C. §§ 701(a)(1), 702.[1]

---

[1] Many other courts of appeals have ruled the same way. *See Tiltti v. Weise*, 155 F.3d 596, 600 (2d Cir. 1998); *Pinar v. Dole*, 747 F.2d 899, 912-13 (4th Cir. 1984); *Broadway v. Block*, 694 F.2d

When Congress wants to preserve remedies outside the CSRA, it does so expressly; for example, the CSRA maintains federal employees' rights to bring suit under Title VII and other anti-discrimination laws.  5 U.S.C. § 2302(d); *see Grosdidier*, 560 F.3d at 497 n.2.

Applying those principles in *Grosdidier*, we held that the CSRA precluded an APA claim that, like Nyunt's, targeted the BBG's implementation of § 1474(1).  We stated that, "except where Congress specifies otherwise, the Civil Service Reform Act is the proper statutory vehicle for covered federal employees to challenge personnel actions by their employers."  560 F.3d at 495-96.  "Federal employees may not circumvent the [CSRA]'s requirements and limitations by resorting to the catchall APA to challenge agency employment actions."  *Id.* at 497.  That principle applies to a "systemwide challenge" to an agency policy interpreting a statute just as it does to the implementation of such a policy in a particular case.  *Fornaro*, 416 F.3d at 67-69.  And it applies even if the CSRA scheme ultimately would provide no relief: As we have repeatedly said, "what you get under the CSRA is what you get."  *Filebark*, 555 F.3d at 1010 (internal quotation marks omitted).  In sum, the settled precedents of this Court bar Nyunt's APA claim; any claim targeting the BBG's interpretation or application of § 1474(1) must proceed through the CSRA process.

Nyunt argues that he cannot obtain relief for this kind of § 1474-related violation in the CSRA process.  He contends that this Court therefore retains the power to consider the

---

979, 986 (5th Cir. 1982); *Ryon v. O'Neill*, 894 F.2d 199, 202-04 (6th Cir. 1990); *Veit v. Heckler*, 746 F.2d 508, 511 (9th Cir. 1984); *Weatherford v. Dole*, 763 F.2d 392, 393-94 (10th Cir. 1985). *But see Worthington v. United States*, 168 F.3d 24 (Fed. Cir. 1999).

BBG's allegedly illegal hiring policy under the precedent of *Leedom v. Kyne*, 358 U.S. 184 (1958). That decision permits, in certain limited circumstances, judicial review of agency action for alleged statutory violations even when a statute precludes review. The *Leedom v. Kyne* exception applies, however, only where (i) the statutory preclusion of review is implied rather than express, *see Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991); *see also McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conference of the U.S.*, 264 F.3d 52, 63-64 (D.C. Cir. 2001); (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts "in excess of its delegated powers and contrary to a specific prohibition in the" statute that is "clear and mandatory," *Leedom*, 358 U.S. at 188; *see also Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263-64 (D.C. Cir. 2006). Even assuming arguendo that Nyunt's claim can meet the first and second requirements, it cannot meet the third, which requires that the agency error be "so extreme that one may view it as jurisdictional or nearly so." *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988). Given that very stringent standard, a *Leedom v. Kyne* claim is essentially a Hail Mary pass – and in court as in football, the attempt rarely succeeds. So it is here: Even if the BBG has misinterpreted or otherwise evaded its statutory obligation to hire "suitably qualified" U.S. citizens, its action is not the kind of "extreme" error that would justify reliance on the *Leedom v. Kyne* exception.

We affirm the judgment of the District Court.

*So ordered.*