# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 5, 2013          Decided May 24, 2013

No. 12-5083

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, ET AL.,
APPELLANTS

LOCAL 1709 AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, ET AL.,
APPELLEES

v.

SECRETARY OF THE AIR FORCE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00692)

*Gony F. Goldberg* argued the cause for the appellants. *Joseph F. Henderson* was on brief. *David A. Borer* and *Eugene R. Fidell* entered appearances.

*Jane M. Lyons*, Assistant United States Attorney, argued the cause for the appellee. *Ronald C. Machen*, *Jr.*, United States Attorney, and *R. Craig Lawrence*, Assistant United States Attorney, were on brief. *Mercedeh Momeni*, Assistant United States Attorney, entered an appearance.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*:

*Remember, a patch on your coat and money in your pocket is better and more creditable than a writ on your back and no money to take it off.*[1]

\* \* \* \*

The American Federation of Government Employees (National AFGE), several AFGE locals[2] that represent Air Reserve Technicians (ARTs) and ART Mark Winstead (collectively, AFGE or appellants) challenge three Air Force instructions requiring ARTs to wear military uniforms while performing civilian duties. Because the exclusive remedial scheme of the Civil Service Reform Act of 1978, 5 U.S.C. §§ 1101 *et seq.* (CSRA), precludes AFGE's claims, we affirm the district court's dismissal of the complaint for lack of subject matter jurisdiction.

---

[1] BENJAMIN FRANKLIN, POOR RICHARD'S ALMANACK 35 (H.M. Caldwell Co. ed. 1900).

[2] The AFGE Locals who are appellants in this case are 997, 1364, 1367, 2077 and 2316. Additionally, AFGE Locals 1709, 1778, 1869, 1952, 1997, 2361, 2568, 3707 and 3854 were plaintiffs in district court but did not join this appeal.

**I.**

National AFGE is a national labor organization that represents employees throughout the federal government and AFGE locals represent, *inter alia*, several bargaining units of ARTs. An ART is a federal employee who is "required as a condition of [ ] employment to maintain membership in the Selected Reserve" of the Air Force and "is assigned to a civilian position as a technician in the organizing, administering, instructing, or training of the Selected Reserve or in the maintenance and repair of supplies or equipment issued to the Selected Reserve or the armed forces." 10 U.S.C. § 10216(a). On August 6, 2007, the Air Force issued three instructions requiring ARTs to wear military uniforms while performing civilian duties. *See* Air Force Instruction 36-703 at 4-5 ("Air Reserve Technicians will adhere to the requirements as those prescribed in AFI 36-2903, *Dress and Personal Appearance of Air Force Personnel*, when wearing the military uniform in civilian status"); Air Force Instruction 36-801 at 6 ("Air Force Reserve Command (AFRC) Air Reserve Technicians (ART) must wear the military uniform while performing civilian duties as an ART"); Air Force Instruction 36-2903 at 9 (uniform wear requirements for ARTs). AFGE claims this requirement harms ARTs because, *inter alia*, (1) "the Air Force is causing confusion between military and civilian status in an era when having or not having the protections of the Geneva Conventions . . . is all too real an issue"; (2) "an ART may not stand or walk with hands in pockets other than to insert or remove items in military uniform"; (3) "[a]n ART may no longer use a personal cell phone, radio, [or] hands-free headset while walking and carry a personal cell phone on the flight line while in military uniform"; and (4) "an ART in military uniform is required to salute an officer in a hat-salute and to provide proper respect to those military members that are senior." Br. for Appellants 4.

On April 23, 2008, AFGE filed a complaint in district court against the Secretary of the Air Force (Secretary). It argued that, under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* (APA), the Air Force instructions are (1) arbitrary and capricious; (2) contrary to law; and (3) in excess of the Secretary's statutory authority under 10 U.S.C. § 10216. The district court dismissed the complaint, concluding that it lacked subject matter jurisdiction because the plaintiffs failed to "exhaust their administrative remedies" under the CSRA. *Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*, 841 F. Supp. 2d 233, 236 n.1 (D.D.C. 2012). AFGE timely appealed.

## II.

"We review de novo the dismissal of a complaint for lack of subject matter jurisdiction." *John Doe v. Metro. Police Dep't of D.C.*, 445 F.3d 460, 465 (D.C. Cir. 2006). In so doing, we accept as true the facts alleged in the complaint. *See Schnitzer v. Harvey*, 389 F.3d 200, 202 (D.C. Cir. 2004). AFGE argues that the dismissal of the complaint was error because its claims fall outside the CSRA's scope. We disagree.

### A.   CSRA/FSLMRS Remedial Scheme

The CSRA is a "comprehensive and exclusive" statutory scheme that "protects covered federal employees against a broad range of personnel practices, and . . . supplies a variety of causes of action and remedies to employees when their rights under the statute are violated." *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir.), *cert. denied*, 558 U.S. 989 (2009). The CSRA creates an "integrated scheme of administrative and judicial review," *United States v. Fausto*, 484 U.S. 439, 445 (1988), wherein the Congress "intentionally provid[ed]—and intentionally [chose] not [to] provid[e]—particular forums and procedures

for particular kinds of claims." *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir.), *cert. denied*, 558 U.S. 1007 (2009).

The CSRA provides "the exclusive avenue for suit" to a plaintiff whose claims fall within its scope. *Grosdidier*, 560 F.3d at 497. The plaintiff must rely on the "variety of causes of action and remedies" created by the CSRA and "may not circumvent the Act's requirements and limitations by resorting to the catchall APA to challenge agency employment actions." *Id.* Even if the plaintiff "cannot prevail in a claim under the CSRA," *id.*, no other relief is available.

Title VII of the CSRA, also known as the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101 *et seq.* (FSLMRS), governs federal labor-management relations. The FSLMRS "establishes a comprehensive scheme to deal with labor relations in federal employment." *Dep't of Def. v. FLRA*, 685 F.2d 641, 644 (D.C. Cir. 1982). For example, the FSLMRS creates the Federal Labor Relations Authority (FLRA), a five-member decisionmaking body that is the public-sector counterpart of the National Labor Relations Board. *See* 5 U.S.C. § 7104; *Rizzitelli v. FLRA*, 212 F.3d 710, 712 n.1 (2d Cir. 2000). The FSLMRS spells out various unfair labor practices, *see, e.g.*, *id.* § 7116, and defines the duty to bargain between federal management and unions, *see id.* § 7117. With the FSLMRS, as with all of the CSRA: "Congress passed an enormously complicated and subtle scheme to govern employee relations in the federal sector, including the authorization of collective bargaining. It follows, then, that federal employees may not circumvent that structure" by seeking judicial review outside the CSRA's procedures. *Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990) (footnote omitted).

The FSLMRS provides several alternative mechanisms to challenge management actions, three of which are pertinent here. *See* 5 U.S.C. § 7121. First, an aggrieved party may resort to a grievance resolution and arbitration procedure that the FSLMRS requires be included in every collective bargaining agreement. Unless a specific statutory or contract exception applies, that procedure is "the exclusive administrative procedure[ ] for resolving grievances which fall within its coverage." *Id.* § 7121(a)(1). After arbitration, either party may file with the FLRA exceptions to an arbitrator's award. *Id.* § 7122(a). The FLRA reviews the award to ensure that it is not "contrary to any law, rule, or regulation" or otherwise deficient on any ground "similar to those applied by Federal courts in private sector labor-management relations." *Id.* Second, the FSLMRS permits a union to bargain over a challenged management action; and if management asserts that the matter is non-negotiable, the union can pursue a negotiability appeal with the FLRA. *See id.* § 7117(c); *see also Dep't of Def.*, 685 F.2d at 644-45. Third, to the extent that management enforces a policy that violates a collective bargaining agreement predating the policy, "any person" can lodge an unfair labor practice charge with the FLRA. 5 U.S.C. §§ 7116(a)(7), 7118(a)(1).

The FSLMRS also provides for judicial review of an FLRA order by petitioning for review in this circuit or "in the circuit in which the person resides or transacts business." *Id.* § 7123(a). And, although there are two exceptions to judicial review in the appropriate court of appeals,[3] "this does not

---

[3] The two exceptions are: an order under "(1) section 7122 of this title (involving an award by an arbitrator), unless the order involves an unfair labor practice under section 7118 of this title, or (2) section 7112 of this title (involving an appropriate unit determination)." 5 U.S.C. § 7123(a).

mean the district courts are open. It means that review is precluded in any court." *Am. Fed'n of Gov't Empls. v. Loy*, 367 F.3d 932, 935 (D.C. Cir. 2004). To the extent an FLRA order is judicially reviewable, then, it may be reviewed *only* in the appropriate court of appeals, not in district court. *Id.*

## B. The Jurisdictional Issue

Because the FSLMRS's remedial regime is exclusive, providing AFGE with multiple options to challenge the dress code, AFGE cannot circumvent this regime by instead bringing a suit in district court.

Specifically, AFGE has at least three administrative options it can use to challenge the dress code. First, a local can attempt to bargain over the dress code and, if the Air Force claims the dress code is non-negotiable, the local can file a negotiability appeal. 5 U.S.C. § 7117(c). In fact, the record includes the example of AFGE Local 1367—one of the appellants—bargaining with the Air Force over this issue and ultimately pursuing a negotiability appeal with the FLRA (which the FLRA rejected). Second, an AFGE local can allege that imposition of the dress code violates 10 U.S.C. § 10216—the claim AFGE raises *sub judice*. Such an allegation easily falls within the definition of a "grievance"[4] under the FSLMRS and thus can be challenged using collective bargaining agreement grievance and arbitration procedures. 5 U.S.C. § 7121. For example, AFGE Local 2361—a plaintiff in district court but not an appellant here— filed a grievance regarding the Air Force instructions and obtained a *favorable* ruling from the arbitrator. *See, e.g.*,

---

[4] A "grievance" includes a complaint "by any employee, labor organization, or agency concerning . . . any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment." 5 U.S.C. § 7103(a)(9)(C)(ii).

Appendix 21-44 ("The Employer violates the Agreement by unilaterally requiring ARTs employees to wear military uniforms while in civilian status performing civilian duties. . . . The Employer shall . . . . not apply the uniform requirements for ARTs in civilian status . . . for the life of the Agreement unless and until the Union agrees to modify the Agreement to permit those requirements or similar changes."); *see also* Appendix 78 (denying grievance brought by AFGE Local 1778, another non-appealing plaintiff). Third, to the extent the dress code conflicts with an existing collective bargaining agreement, an aggrieved party can file an unfair labor practice charge over the issue. *See* 5 U.S.C. §§ 7116(a)(7), 7118(a)(1). For example, AFGE Locals 2316 (an appellant here) and 3854 (a plaintiff in district court but not an appellant here) have attempted to challenge the Air Force instructions in this manner. In fact, we have already decided a petition for review regarding one local's different challenge to the same Air Force instructions. *See U.S. Dep't of the Air Force v. FLRA*, 648 F.3d 841, 848 (D.C. Cir. 2011) (granting Air Force's petition for review of FLRA decision that union proposal for uniform cleaning is negotiable condition of employment). The FSLMRS does not, however, authorize the dress code to be challenged by way of a lawsuit begun in district court.

The CSRA can preclude a claim from being brought in a district court even if it forecloses the claim from administrative review and has not "identified some other kind of plaintiff or some other kind of procedure for bringing the claim." *Filebark*, 555 F.3d at 1013. The case for preclusion is stronger here because the FSLMRS in fact provides a means to review the Air Force instructions—including, in some circumstances, judicial review—via at least these three routes. While the appellants may not prevail using one of these procedures or would prefer to challenge the Air Force instructions by some other means, that does not mean their claims may be brought outside the CSRA's exclusive

remedial scheme. Rather, as we have explained, "it is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies thereunder, that counsels judicial abstention." *Spagnola v. Mathis*, 859 F.2d 223, 227 (D.C. Cir. 1988) (en banc) (per curiam).

The appellants argue that while the CSRA may preclude the AFGE locals' claims, it does not preclude the claims of National AFGE. Specifically, they complain that National AFGE—unlike an employee or a union local with a collective bargaining agreement with the Air Force—has no relief under the FSLMRS and thus should be permitted to proceed outside the CSRA to seek relief. But the fact that National AFGE may not pursue a claim through the CSRA does not mean that it has access to the courts. Rather, it means that National AFGE may not raise the claim at all. The CSRA's exclusion of certain parties from judicial review is "not an invitation to those [parties] to sue under other statutes but a 'manifestation of a considered congressional judgment that they should not have statutory entitlement to review.' " *Filebark*, 555 F.3d at 1013 (quoting *Fausto*, 484 U.S. at 448-49); *Davis v. Billington*, 681 F.3d 377, 388 (D.C. Cir. 2012) ("Indeed, the only evidence Davis uses to suggest he is not 'included' in the CSRA's comprehensive remedial scheme is the lack of relief available to him under that scheme. . . . [T]his is certainly not a sufficient reason to place a claimant and his claims outside the ambit of a comprehensive remedial scheme . . . . "). The FSLMRS provides the exclusive procedures by which federal employees and their bargaining representatives may assert federal labor-management relations claims. To the extent the procedures omit other parties—like a national labor organization (at least one that is not party to a collective bargaining agreement)—we presume that exclusion is intentional. Were we to hold otherwise, a union local could circumvent the CSRA's strictures by requesting that a national union file general APA claims outside the CSRA on

its behalf. We decline to allow National AFGE, which here asserts only the rights of its member-employees and member-union locals, to file a suit outside the CSRA simply because it cannot do so under the CSRA. *See Sackett v. EPA*, 132 S. Ct. 1367, 1374 (2012) ("Where a statute provides that particular agency action is reviewable at the instance of one party, who must first exhaust administrative remedies, the inference that it is not reviewable at the instance of other parties, who are not subject to the administrative process, is strong."); *see also Elgin v. Dep't of the Treasury*, 132 S. Ct. 2126, 2133 (2012) ("Just as the CSRA's 'elaborate' framework demonstrates Congress' intent to entirely foreclose judicial review to employees to whom the CSRA denies statutory review, it similarly indicates that extrastatutory review is not available to those employees to whom the CSRA grants administrative and judicial review." (citation omitted)).[5]

Similarly, we reject AFGE's argument that the district court has jurisdiction because it can more efficiently adjudicate AFGE's claim that the Air Force instructions are contrary to statute on a nationwide, rather than local-by-local, basis. But a plaintiff's inability to use the APA to circumvent the CSRA's requirements "applies to a 'systemwide challenge' to an agency policy interpreting a statute just as it does to the implementation of such a policy in a particular case." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d

---

[5] We reject the argument that "[t]he doctrine of associational standing entitles the National AFGE to adjudicate a nationwide claim." Br. for Appellants 15. Standing *vel non* is a different issue from claim preclusion under the CSRA. *See, e.g.*, *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 448 (D.C. Cir. 2009) (plaintiff's claim precluded by CSRA notwithstanding plaintiff's standing).

445, 449 (D.C. Cir. 2009).[6] Nor may a party avoid the CSRA because it provides only an "inconvenient" remedy:

> The controllers do have a remedy: if the FAA fails to live up to its agreements, the union can pursue the matter and if the union fails to live up to its duty of representation, the controllers can pursue the union. These procedures surely lack the directness and immediacy of an APA suit, and the controllers have apparently found them frustrating. But the choice of procedures lies with Congress[.]

*Filebark*, 555 F.3d at 1014 (citations omitted).

Furthermore, AFGE's reliance on *AFGE Local 446 v. Nicholson*, 475 F.3d 341 (D.C. Cir. 2007) is misplaced. In *Nicholson*, an AFGE local representing nurses employed by the Department of Veterans Affairs (VA) won an arbitration award against the VA. *Id.* at 346. When the VA refused to recognize the award, the local filed an unfair labor practice charge with the FLRA. *Id.* at 345. Subsequently, the VA

---

[6] AFGE does not request that we apply the exception discussed in *Leedom v. Kyne*, 358 U.S. 184 (1958), nor would we apply it if AFGE had so argued. *See Nyunt*, 589 F.3d at 449 (*Leedom* exception permits "judicial review of agency action for alleged statutory violations even when a statute precludes review . . . . where (i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is 'clear and mandatory' "; to satisfy the third requirement the "agency error must be so extreme that one may view it as jurisdictional or nearly so" (citations and quotation marks omitted)). In *Nyunt*, we emphasized that the *Leedom* exception is like "a Hail Mary pass" that "rarely succeeds." *Id.*

Under Secretary—acting under a specific statute pertaining only to VA employees—issued an order making it impossible to enforce the arbitration award. *See id.* at 345. The statute provided that the Under Secretary's order " 'may not be reviewed by any other agency.' " *Id.* (quoting 38 U.S.C. § 7422(d)). The FLRA dismissed the unfair labor practice charge, concluding that both the order and the statute deprived it of jurisdiction. *Id.* The local then filed a complaint in district court challenging the Under Secretary's decision insulating the unfair labor practice claim from FLRA review. *Id.* Emphasizing that the local challenged the Under Secretary's decision as opposed to an FLRA decision, we held that the CSRA did not deprive the district court of jurisdiction. *Id.* at 347-48. *Nicholson* is distinguishable because it involved a challenge to the Under Secretary's order insulating the underlying dispute from review, an order that is "expressly outside the FLRA's purview." *Id.* at 348.

Finally, we note that the district court erroneously used the administrative exhaustion doctrine to dismiss the complaint. *See Am. Fed. of Gov't Empls.*, 841 F. Supp. 2d at 236. Administrative exhaustion means that a party cannot bring a claim in a particular court until that party follows certain administrative steps. But if judicial review were available to AFGE, it would be available in circuit, not district, court. *See* 5 U.S.C. § 7123(a). Thus, AFGE's argument that we should waive the requirements of "administrative exhaustion" for equitable reasons misses the point: the exclusive remedial scheme of the CSRA keeps these claims out of the district court entirely.

In sum, the Congress has provided multiple paths by which AFGE can challenge the Air Force instructions. And AFGE cannot disturb the CSRA's exclusive remedial regime by following a path the Congress has closed.

For the foregoing reasons, we affirm the district court's dismissal of the complaint for lack of subject matter jurisdiction.

*So ordered.*